# CHARLESTON.

T. B. GODFREY v. WEYANOKE COAL & COKE CO.

Submitted October 1, 1918.     Decided October 8, 1918.

1. MINES AND MINERALS—*Conveyance—Destruction of Surface.*

A grant of the coal, minerals and metals underlying a tract of land, with the right to mine and extract the same, but reserving the surface, does not permit the destruction of the surface or any part thereof by depriving it of its subjacent support, unless the right to do so has been expressed in terms so plain as to admit of no reasonable doubt. (p. 667).

2. SAME—*Coal in Place—Supports.*

Ordinarily the grantee or lessee of coal or other minerals is required to leave such part of the coal as will suffice to support the surface in its natural condition, or to substitute for the coal other permanent artificial support, except where the grantor has expressly and clearly exonerated the grantee from the burden of that servitude. (p. 667).

3. SAME—*Grant—Subjacent Supports—Release.*

But where a deed grants "the right to mine, extract, remove and take away the entire amount and body of said coal * * without reservation, let or hindrance * * without being in any

way liable for any damage or injury which may be done to said land, to any waters, or water courses therein or thereon by reason of the mining, excavating and receiving said coal, * * and generally freed, cleared and discharged of and from all servitude whatsover to the land over said coal'', there is a clear, express and unequivocal waiver or release of the usual right to subjacent support.  (p. 667).

4.  SAME—*Conveyance of Coal—Reservation.*

Where the grantors in a coal deed which grants the right to mine, extract and remove "the entire amount and body of said coal * * without reservation, let or hindrance", reserve to themselves, so long as they shall choose to exercise it, "the right to take coal from any bank on said land for their own fuel", such reservation is subject to the superior right of the grantee of the coal to mine and extract it until exhausted, and terminates with the exhaustion of the coal granted.  (p. 670).

5.  SAME—*Conveyance—Timber.*

Where a coal deed confers upon the grantee the right to cut and use for mining purposes the timber on the land overlying the coal, such timber remains the property of the grantor or his assigns until the grantee exercises his right to cut and appropriate it to the use contemplated by the deed, and, until so cut and appropriated, the grantee owes the same duty to use due and reasonable care not to damage or injure it that he would have owed if the deed had conferred upon him no permissive right thereto. (p. 671).

Case certified from Circuit Court, Mercer County.

Trespass on the case by T. B. Godfrey against the Weyanoke Coal & Coke Company.  Rulings on demurrer to declaration certified from the circuit court.

*Affirmed.*

*Horace M. Fox* and *Sanders, Crockett & Kee,* for plaintiff.

*John R. Pendleton* and *Anderson, Strother, Hughes & Curd,* for defendant.

LYNCH, JUDGE:

The declaration in trespass on the case for damages for injury to land contains four counts to each of which defendant demurred.  The court sustained the demurrer as to the first two counts and overruled it as to the other two, and

these rulings are certified to this court for review. The plaintiff is the owner of the land alleged to be damaged, but his ownership does not include the coal, other minerals or metals upon, within or under the lands, title to those having been transferred by his grantors to George M. Bartholomew and David E. Johnston, August 21, 1882. Wherefore plaintiff did not acquire title to the coal, minerals and metals contained within the land purchased by him. The defendant, Weyanoke Coal & Coke Company, the remote vendee of Bartholomew and Johnston, has, as seems to be conceded, mined and removed all the coal conveyed to them without leaving sufficient coal or substituting therefor artificial means to support the overlying surface. The subsidence of the surface, because unsupported, and the consequential creation of fissures, partings and cleavage therein constitute the cause of action averred in the first count of the declaration.

Whether the cause averred is actionable depends upon the terms, provisions and contents of the deed of August 21, 1882, made part of the record upon oyer craved by the demurrant, and subject to which plaintiff acquired title to the residue of the freehold not thereby transferred. That deed granted not only the coal, minerals and metals contained within the land conveyed but also elaborate and comprehensive mining rights, powers and privileges upon, over and through the tract. More specifically stated so far as pertinent to the present inquiry, these powers and privileges include: "the right to mine, extract, remove and take away the entire amount and body of said coal  *  *  *  without reservation, let or hindrance, and with all proper and reasonable rights and privileges for ventilating and draining such mines without being in any way liable for any damage or injury which may be done to said land, or to any waters or water courses therein or thereon by reason of the mining, excavating and receiving said coal  *  *  *  by the said parties of the third part (Bartholomew and Johnston), their heirs, assigns or lessees,  *  *  *  and generally freed, cleared and discharged of and from all servitude whatsoever to the land over said coal." The manifest, indeed the obvious and clearly expressed, intention of the parties to this conveyance was to

preclude the possibility of an attempt to hold the grantees or their assigns responsible in damages for injuries to the land by reason of any act or thing done in the exercise of the rights conferred by the grant. To the accomplishment of this end language could scarcely be more positive, comprehensive or effective. The claim for damages in this action rests wholly upon the assumption of the existence of a condition of servitude of the coal as regards the superincumbent surface. Conceding the correctness of the assumption arising from an ordinary conveyance severing the fee in coal from the fee in the residue of the land containing the coal, the parties to the deed expressly covenanted against liability chargeable to that servitude.

Certainly this exemption was within the power and province of the grantors and grantees without let or hindrance from any other source. They were competent to contract upon such terms and conditions as they deemed advisable; and could agree to insert in the contract such provisions enlarging or diminishing the legal liability of the grantees, provided only that they did not transgress or impinge upon any inexorable rule of law or invade the realm dominated by public policy. No case cited or examined upon this review denies the right exercised by the parties to the deed to stipulate as they did to exonerate the grantee from responsibility for consequential injury to the proprietary rights of the owner and grantor or lessor, the only condition being that the exonerating provision shall be clearly expressed. *Catron* v. *South Butte Mining Co.*, 181 Fed. 941. In that case the court says: "And it is well settled that the grant of the surface with a reservation of the minerals and the right to extract the same, does not permit the destruction of the surface, unless the right to do so has been expressed in terms so plain as to admit of no doubt." The same qualification runs through the decisions and text books dealing with mining contracts, whether they are deeds of grant or leases. 18 Ruling Case Law, pages 1244-1246; 27 Cyc 789, 790, and numerous authorities cited. And it seems clear beyond question that the exemption clause of the Bartholomew and Johnston deed falls within the qualification noted by these author-

ities. If it does not, the qualification of the general rule is apparently meaningless.

Embodied in the deed are the terms, provisions and conditions by which the parties thereto have elected to be bound, and it is not within the province of a legal tribunal to interpret their meaning and intention otherwise than they have explicitly declared in the grant. Their agreement, when free of ambiguity or doubt, furnishes the law controlling them. The grantors virtually said to the grantees: ''We convey you the coal under the land described in the deed and ample mining rights in and upon the tract, and although you may or may not lawfully be required to leave such part of the coal, or substitute for such part other permanent artificial means, as will suffice to support the surface in the event you remove all the coal as authorized by us, yet we solemnly and upon a valid consideration discharge and exonerate you from the burden which but for this exoneration you would assume.'' There is a complete and unequivocal agreement grounded upon a valuable consideration to discharge and exonerate the owner of the servient estate from all liability which might legally be implied or inferred but for the specific terms employed, and to authorize him to exercise the rights granted free, acquit and discharged from such liability in the event he exercises to the fullest extent the powers and rights conferred upon him.

Words less conclusive because less comprehensive have been held sufficient to constitute an effective waiver of the right of subjacent support. *Madden* v. *Lehigh Valley Coal Co.,* 212 Pa. 63. The deed there involved purported to convey the surface and reserved to the grantor the right ''to mine and take away the coal without making any compensation to the grantee, his heirs or assigns for any effect upon or injury to the said lot or piece of ground, or the surface thereof, or to the buildings below the surface thereon, or to the building erected thereon in consequence of mining'', and it was there held that the grantee had no right to surface support and was not permitted to recover for the failure to provide for such support.

There is in this count no averment sufficient to indicate

an intention to rely on any cause of action other than the breach of an implied covenant for subjacent support, and no imputation of negligence except that which pertains to the failure to provide such support. Perceiving no error in the ruling upon the demurer thereto, we approve that action.

The second count is predicated upon a reservation in the deed of August 21, 1882, in this language: "The parties of the first part (presumably plaintiff's grantors) reserve to themselves so long as they shall choose to take coal from any bank on said land for their own fuel." The cause of action apparently disclosed by this count is the failure of the defendant company to leave unmined a body of coal in the land for the use and benefit of the plaintiff at or near the pit mouth of the mine, through which he had without objection from any one been permitted to obtain coal during the progress of the defendant's mining operations. These operations, however, have resulted, as may be inferred from the averments of the second count of the declaration, in the virtual, if not complete, exhaustion of the coal underlying plaintiff's land, or of that seam in which the operations were conducted. There may be on the land other seams yet untouched for mining purposes. If so, the deed conveys them to the grantees. This, however, is not important upon the present inquiry.

This count rests the right to recover damages upon an alleged duty "to leave undisturbed and unmolested sufficient coal in said bank for the use of the said plaintiff, and to so conduct the mining operations * * * as not to interfere with the plaintiff's reservation of same or with plaintiff's removal and use thereof, and it became and was the duty of the defendant to so conduct its mining operations on said land as not to destroy, take away or damage said coal bank and the said opening duly chosen and selected by the said plaintiff with the knowledge and notice of the said defendant, but so to conduct its mining operations as not to in anywise interfere with or damage the same." Upon these averments the conclusion is reached that, by disregarding the duty and intending to injure the plaintiff, the defendant "did drive its shaft and tunnel into, through, out and over the said coal

bank and opening so selected and chosen by the plaintiff, and by reason thereof did thereby injure, damage, ruin and totally destroy the same and render the same wholly worthless."

Apparently plaintiff's grantor sought to reserve in the deed of August 21 merely the right or privilege to take and use so much of the coal as he or his family might need "for their own fuel". For nowhere in that instrument is there an express or implied reservation of title to any part of the coal. The right reserved to take and use was subject to the superior right of the grantee therein to mine and remove the entire body of the coal. Whether the right reserved was personal to the grantor only or was such as he could transfer by the grant of the surface is immaterial, as in either event that right clearly is subject to the superior right of the grantee of the coal to mine and remove all of it without let or hindrance, a right created long before plaintiff acquired the surface, and of which he had at least constructive notice when he purchased the surface.

The count considered seems to aver the complete exhaustion of the coal under the land as a result of the mining operations conducted by defendant. If so, the privilege of using coal for fuel terminated with the exhaustion, as the right to free gas reserved in a gas lease terminates with the cessation of gas production from the leased premises due to a like exhaustion, or of the oil royalty for the same reason. Neither survives production from the particular tract without some saving provision in the contract.

But if the count may be broad enough to indicate an intention to rely on an obstruction to the exercise of the right to take and use coal during the progress of the mining operations, an intention certainly not clearly disclosed, the same rule would apply if the exercise of that right seriously interfered with the exercise of the superior right of the defendant, and there is no averment to the contrary effect.

The third and fourth counts charge virtually the same duty and breach and consequential damage by reason of the destruction or injury to timber growing on plaintiff's land by fire kindled by employes of the defendant on adjacent land owned, operated and controlled by it for like pur-

pose, and negligently permitting it to spread therefrom onto the lands of the plaintiff. The ground of the demurrer to these counts was the right conferred by the deed upon the defendant to use the timber on the land for mining purposes. The existence of this right, however, does not necessarily prevent the recovery of damages for the negligent destruction of a valuable element of plaintiff's property. Until defendant chose to exercise his right to cut the timber on plaintiff's land and use it for mining purposes, it remained the property of the plaintiff, with the possibility, and in this case a strong possibility, that it would never be cut and used. Until defendant appropriated the timber to the use contemplated by the deed, he owed the same duty to use due and reasonable care not to damage or injure it that he would have owed if the deed had conferred upon him no permissive right thereto.

Wherefore we affirm the ruling upon the demurrers to each of four counts of the declaration, and certify the case back to the circuit court for further proceedings.

*Affirmed.*