FRED P. STAMP AND LOUISE A. STAMP

*v.*

WINDSOR POWER HOUSE COAL COMPANY, *a corporation*

(No. CC881)

Submitted May 26, 1970.          Decided June 23, 1970.

Rehearing Denied November 13, 1970.

*Schmidt, Laas, Schrader & Miller, Frederick P. Stamp, Jr., Thomas B. Miller, Richard M. Alker,* for plaintiffs.

*Bachmann, Hess, Bachmann & Garden, John L. Allen, Lester C. Hess, Jr.,* for defendant.

BROWNING, PRESIDENT:

This case arises from an action instituted on July 11, 1968, in the Circuit Court of Ohio County by Fred P. and Louise A. Stamp, appellees herein, against the Windsor Power House Coal Company, a corporation, appellant herein.

Appellees purchased a certain 38-acre tract of land in Ohio County in 1954, and resided in a two-story brick house located thereon until October 26, 1966, when surface subsidence forced them to vacate the premises. Appellant is the owner of the Pittsburgh No. 8 seam of coal underlying appellees' property. Severance of the coal was completed in 1917 by appellant's predecessors in title. This seam of coal was conveyed by a prior deed containing the following language:

> *All* the Pittsburg Number Eight or River Vein of coal underlying a tract of 135 Acres and 2 poles of land situate in Richland District, Ohio County, West

Virginia . . . together with all the rights and privileges necessary and useful in the mining and removal of said coal, including the right of mining the same with or without leaving any support for the overlying strata, and without liability for any injury which may result to such overlying strata or to the surface, or to water courses or roads or ways by reason of the mining and removal of said coal, and also the coal under other lands, and at pleasure to place, maintain, remove or replace under the surface all fixtures, structures, machinery and appliances deemed necessary or convenient for the operation of the mines, and to do all things required to ventilate and drain the workings through the surface of said lands, and the second party shall have the right to purchase at any time so much of the surface of the said property of the first party as may be required for the purposes aforesaid; the consideration to be paid by said second party for the surface so taken shall be mutually agreed upon at the time same is taken by the parties hereto; in case of their failure to agree, such price shall be determined by three arbitrators, one to be chosen by the first party hereto, the second to be chosen by the second party, and the third by the two so chosen, who shall have authority to hear all evidence presented, and the decision of a majority of said arbitrators shall be final, and binding on the parties hereto and their assigns. In case said two first appointed arbitrators cannot agree on the third man within ten days after being notified, the choice of said third man shall be made by the Clerk of the Circuit Court of Ohio County. No openings or shafts upon the surface of said land shall be nearer than 20 rods to any of the principal buildings upon said land, and all such openings shall be in the ravines or waste places on said land. All drainage from the mines or other workings connected therewith shall be delivered by the second party through confined channels to the nearest ravine having sufficient slope for such drainage.

The right to drill through said coal for oil, gas, coal and water is expressly reserved by said party of the first part, for herself, and her assigns, and also the right to mine and remove all coal under or below the Pittsburgh No. 8 vein, which is the coal conveyed by this deed, with the understanding, however, that such right shall not deprive the second party herein of his right to remove all the coal conveyed by this deed, and shall further be exercised in a way so as

not to interfere with the mining and removal of the coal hereby sold and conveyed. (Emphasis added.)

On or about October 26, 1966, surface subsidence began on appellees' property, allegedly making their house unsafe to live in. Appellees instituted the aforementioned action alleging that because of appellant's "gross, wilfull and wanton negligence" in its mining operations, damages in the amount of $109,704.07 resulted.

Appellant made a motion for a summary judgment on the ground that the appellees had waived their right to subjacent support in the severance deed and released the appellant from liability. This motion was denied, and the circuit court, on its own motion, on December 18, 1969, certified the following questions to this Court:

1. Does the language in the deed constitute a waiver of plaintiffs' absolute right to subjacent support which thereby destroys plaintiffs' absolute right, as a matter of law, to recover for damages to their property caused by the defendant's mining.

Circuit Court's ruling: It does not.

2. If the language in the deed constitutes a waiver of subjacent support, does such language also preclude plaintiffs' right to recover for damages to their property caused by the defendant's negligence in mining.

Circuit Court's ruling: It does not.

3. If the language of the deed constitutes both a waiver of subjacent support and a release of liability for negligence, does the language further preclude the plaintiffs' right to recover for damages to their property caused by the defendant's gross negligence in mining.

Circuit Court's ruling: It does not.

This case was docketed by this Court upon the ruling of the trial court denying summary judgment upon the pleadings under the authority of Code, 58-5-2, as amended. This is what

is generally referred to as a certified case, and we are limited to passing upon the questions of law adjudicated by the trial court and propounded by it to this Court.

The law is well settled in this State that a party to a valid contract may in advance limit his liability for acts of negligence whether the subsequent action be based on contract or tort. *Williams v. Chrysler Corp.*, 148 W.Va. 655, 137 S.E.2d 225. The issue inherent in the first question certified has been the subject of much litigation in this State over a long period of years and, of course, in other jurisdictions where coal mining is extensive. It is the view of this Court that the ruling of the trial court on the first question certified was clearly erroneous. We do answer the first certified question: "It does." *Godfrey v. Weyanoke Coal & Coke Co.*, 82 W.Va. 665, 97 S.E. 186, is indistinguishable from the present action. That, too, was an action against a coal company for damage to the surface alleged to have been caused by removal of an underlying vein of coal. This, insofar as pertinent, is a portion of the deed conveying the coal to the defendant in that case:

> [T]he right to mine, extract, remove and take away the entire amount and body of said coal . . . without reservation, let or hindrance, and with all proper and reasonable rights and privileges for ventilating and draining such mines without being in any way liable for any damage or injury which may be done to said land, or to any waters or water courses therein or thereon by reason of the mining, excavating and receiving said coal . . . by the said parties of the third part (Bartholomew and Johnston), their heirs, assigns or lessees, . . . and generally freed, cleared and discharged of and from all servitude whatsoever to the land over said coal.

The trial court in that case sustained demurrers to each of the four counts of the declaration. This Court affirmed its action in so doing. In the third syllabus point of that case, the Court held that the foregoing language was "a clear, express and unequivocal waiver or release of the usual right to subjacent support."

This Court has gone further and, in the third syllabus point of the controversial *Griffin v. Coal Co.*, 59 W.Va. 480, 53 S.E. 24, held the following:

> Where a deed conveys the coal under a tract of land, together with the right to enter upon and under said land and to mine, excavate and remove all of it, there is no implied reservation in such instrument that the grantee must leave enough coal to support the surface in its original position.

This Court in that case emphasized and relied upon the use of the words "all of it" in arriving at its decision. Judge Cox, concurring in the decision of the Court, asked by what means a surface owner could "waive or exclude the benefit of the rule of law," *sic utere tuo ut alienum non laedes.* He stated:

> I would answer that he may waive or exclude the benefit of this rule of law in precisely the same way that he may waive or exclude it in relation to any other property owned by him, or any other rule of law the violation of which has caused or will cause him injury. It is now fully settled by the authorities, no matter upon what ground they base the right of support, that the surface owner may waive or exclude it by contract. "The right to remove all the minerals in a certain strata, though the support of the super-incumbent strata is destroyed thereby, may be created by apt words." 6 Am. & Eng. Dec. Eq., 643, and English and American cases there cited.

In *Simmers v. Star Coal & Coke Co.*, 113 W.Va. 309, 167 S.E. 737, the *Griffin* case was approved. Judge Hatcher said for a unanimous Court:

> A grantor cannot specifically sell a right and then recover damages of his grantee for using the very right sold; nor can a grantee recover damages of his grantor for employing a right when the grantee has agreed to the unrestricted reservation of a right.
>
> \* \* \*
>
> Therefore, we must follow the *Griffin* decision not only because it is logical, but also because *it has become a rule of property in this state.* (Emphasis added.)

In *Continental Coal v. Connellsville By-Product Coal Co.*, 104 W.Va. 44, 138 S.E. 737, the Court said: "We are not directed to any law or public policy which prohibits a land owner from selling subjacent support, although thereby his overlying minerals and surface may be damaged or destroyed. *Godfrey v. Weyanoke Coal & Coke Co.*, 82 W.Va. 665. The legislature has not seen fit to act in that regard." See also *Hall v. Harvey Coal & Coke Co.*, 89 W.Va. 55, 108 S.E. 491, and the many other cases cited in the cases to which reference has heretofore been made. The Honorable Robert T. Donley, Professor of Law at the West Virginia University College of Law and a former Judge of this Court, in his book, THE LAW OF COAL, OIL AND GAS IN WEST VIRGINIA AND VIRGINIA, at page 213, made this statement:

> If, by unambiguous language any specified right is granted or withheld, there is no public policy which defeats its enforcement, even though the public interest may seem to be adversely affected.
>
>        \*    \*    \*
>
> The doctrine of express waiver of subjacent support by use of the magic word "all" is firmly established as a rule of property in West Virginia.

In the more recent case of *Winnings v. Wilpen Coal Co.*, 134 W.Va. 387, 59 S.E.2d 655, it was held that a structure built upon the surface becomes a part of the surface. That holding would seem to answer the contention that the plaintiffs could recover for damage to their dwelling house even though they could not recover for the subsidence of the land beneath it, *i.e.*, the surface.

The answer to the second certified question is not so simple. However, upon a careful review of the pertinent decisions of this Court, we are of the view that it also should have been answered in the affirmative, and we do answer the second certified question by the words: "It does." In the *Griffin* case, the second count of the declaration alleged, according to the trial judge's written opinion, that the defendant "through its agents, servants and employees entered said mine under the said premises and wrongfully and wilfully" performed such acts as caused damage to the surface of the land which was

owned by the plaintiff. The Court nevertheless held that there could be no recovery of the damages. This Court, as presently constituted, does not necessarily approve of the holding in the *Griffin* case that a surface owner could not recover for a wilful or wanton act of those who were producing coal which they owned beneath the surface of the plaintiff's land. We are merely holding that the language of the instant deed precludes recovery for *negligence*.

As to the third question certified, these statements are contained in 13 MICHIE's JURISPRUDENCE, under the subtitle "Degrees of Negligence or Care," at page 510: "The distinction between gross and ordinary negligence has been disapproved of as too vague and shadowy to be of any practical importance. * * * 'Negligence' and 'ordinary care' are correlative terms." West Virginia cases cited in the footnotes support this proposition. Therefore, the answer to the third certified question is: "It does."

The judgment of the Circuit Court of Ohio County is reversed and the case is remanded.

*Reversed and Remanded.*