# CIRCUIT COURT OF THE CITY OF CHESAPEAKE

Allison S. Hudgins,
Adm'x of the Estate of
John R. Hudgins, Jr.

v.

Glenn E. Holman
and Virginia Electric
and Power Co.

### Case No. (Law) CL97-176-M

Carole A. Victorio,
Adm'x of the Estate of
Frank E. Young

v.

Glenn E. Holman
and Virginia Electric
and Power Co.

### Case No. (Law) CL97-177

### June 30, 1999

BY JUDGE V. THOMAS FOREHAND, JR.

The events, which lead to the plaintiffs' filing their motion for judgment, occurred on the morning of March 18, 1996.

On that day, defendant Holman was dispatched to disconnect electrical service at Mary's Gas-Lite Lounge located at 4341 Indian River Road because of non-payment of service bills. Upon his arrival, defendant Holman contacted

an unidentified employee of Mary's, informed that employee of his purpose, and proceeded to the rear of the establishment in order to carry out his duties. Defendant Holman utilized a 28-foot aerial lift, attached to the rear of his vehicle, to elevate to approximately rooftop level so that he could disconnect the electric current to Mary's Gas-Lite Lounge.

However, before he could finish, another employee of Mary's appeared and produced documentation that the dispute as to payment had been satisfied. Defendant Holman lowered his bucket lift to discuss this matter with the newly-arrived employee. He then climbed from the bucket lift to the cab of his truck and radioed his supervisor for instructions. Holman was ordered not to disconnect the electrical service and determined to leave the area. However, defendant Holman failed to fully secure the aerial lift into a transport-safe position. The aerial lift was askew, unharnessed, and elevated somewhat when defendant departed the shopping center.

The raised lift did not allow defendant Holman to proceed far, as it struck the overhead power lines connected to an adjacent business, Advanced Auto Parts located at 4345 Indian River Road. The force of the impact severed the power lines and damaged the utility pole. Defendant Holman immediately conducted an inspection of the meter base and determined that it was quite damaged, with smoke pouring from the right side of the base.

Shortly, an employee of Advance Auto Parts appeared and informed Holman that not only had the store lost electrical power, but also a small fire had developed inside at the location of the store's fuse box. Defendant Holman then contacted his supervisor a second time to report the crisis, while the store's employees evacuated Advanced Auto Parts' customers. After a futile attempt to mitigate the fire with portable extinguishers, Advanced employees left the store and called the fire department. The Chesapeake Fire and Police Emergency Operating Center was beckoned by Advanced employees with a frantic 911 call.

At approximately 11:30 a.m., units of the Chesapeake Fire Department responded to the scene. Two firefighters, Frank E. Young and John Hudgins, entered Advanced Auto Parts to assess the fire and supply corresponding tactical information for an adequate response by the fire department. After exiting the store, water suppression lines were deployed to combat the menacing fire. Despite these efforts, the fire was not suppressed.

Firefighters Young and Hudgins re-entered the store. At 11:50 a.m., the two men radioed that they were trapped. The firefighters reported that deadly fire surrounded them on all sides and that escape appeared impossible. Very soon thereafter, the roof of the store, burdened by flame, could no longer support itself and collapsed.

Both firefighters died of direct injuries sustained by burns, oxygen deprivation, and injuries from falling debris. The deaths of these brave firefighters were a great loss to the community and to their families and friends. Simply, Mr. Young and Mr. Hudgins are heroes. They are great men who will long be admired and honored by the citizens of Chesapeake and by firefighters everywhere.

The estates of the decedent firefighters filed their initial motions for judgment on February 18, 1997, and amended on May 20, 1997. The plaintiffs allege three counts of tortious conduct: (1) negligence by defendant Holman by failing to use ordinary and reasonable care in the use of his aerial lift and to otherwise conduct his business in a reasonable, careful, and prudent manner with due regard for the safety of others pursuant to Virginia Code § 8.01-226; (2) negligence of defendant Virginia Power Company based upon the principle of respondent superior; and (3) negligence by defendant Virginia Power Company to take effective corrective measures to address a known and dangerous condition.

Defendants have filed a demurrer to the plaintiffs' motion for judgment based upon immunity stemming from the "fireman's rule." Due to the importance of the issues at hand and the significance of the legal issues in dispute, this Court deliberated at great length. After much deliberation, this Court finds that Defendants' demurrer shall be sustained.

The "fireman's rule" is a common law rule which limits a defendant's liability for otherwise culpable conduct, which causes injury to public officials pursuing their duty. Traditionally, police officers and firefighters were the public officials covered by the rule; however, statutory changes have expanded it to cover those public officials who perform similar functions as the aforementioned. For example, now the rule, due to statutory changes, covers emergency medical personnel. Further statutory changes, which are at issue in the present case as to meaning and scope, have changed the rule in that now a "duty of care" is owed to covered public officials. *See Goodwin v. Hare*, 246 Va. 402, 436 S.E.2d 605 (1993); Virginia Code § 8.01-226.

The Supreme Court of Virginia first promulgated the "fireman's rule" in its 1968 ruling in the case of *Chesapeake & Ohio R.R. Co. v. Crouch*, 208 Va. 602, 159 S.E.2d 650 (1968). In that holding, the Court explained the logic of the rule:

A fireman assumes the usual risks inherently involved in fire fighting. The rationale of this view may be expressed as follows: The fireman, from the very nature of the public duty undertaken by him, is bound to aid in suppressing fires, however caused. It is well known that there

is negligence present in the origin of many, if not most, fires and that there is a potential danger inherent in all. In responding to an alarm, the fireman necessarily is aware that fire is in progress and the usual hazards are apt to exist; yet his duty so to respond is unaffected by the fact that the fire may have been created by negligence. If injured while encountering the ordinary hazards his duty requires him to confront, it is immaterial that the fire was negligently set.

*Id.* at 608. Further, the court stated:

The assumption of risk doctrine employed in fire cases does not depend upon the existence of a spirit of venturesomeness in face of known danger, as is true in automobile negligence cases, but rather upon the relationship between the fireman and the public, from which arises his obligation to accept the usual risks of injury in undertaking to suppress fires without regard to whether or not they are caused by negligence.

*Id.* at 608.

In the 1992 case of *Benefiel v. Walker*, 244 Va. 488, 422 S.E.2d 773 (1992), the Virginia Supreme Court reflected on the public policy considerations which led to the rule. First, the Court noted that firefighters are compensated for injuries sustained in the ordinary performance of their duties via the workers' compensation system. Second, that police officers and firefighters often enter the premises of property owners and/or occupiers by statutory authority at unforeseeable times and into areas normally not necessarily open to the general public. Thus, it is unfair to hold property owners and/or occupiers liable for hazards when the owner and/or occupier is unaware of the official's entry onto premises, unable to make such premises safe (in anticipation of official's entry), and/or unable to properly warn the officials of an existing hazard when exigency of circumstances prevent such. *Id.* at 493-94.

The Court in *Benefiel* discussed who might assert the protection of the rule. The Court took notice that "all the other jurisdictions that have considered [the fireman's rule] have excluded from the protection of the rule third parties whose negligent acts did not give rise to the emergency and those who were not occupiers of the premises where the emergency arises and injuries occurred." *Id.* at 495. However, while noting this was done in other jurisdictions, the Court did not affirm such to be the law in Virginia. Indeed,

the issue of whether third parties may utilize the "fireman's rule" is one of first impression in this state.

It should be noted that the development of the law on such an issue in another jurisdiction does not mandate that Virginia follow such a path. Only the laws of the Federal government and the holdings of the federal judiciary have sufficient authority to require Virginia to comport its law in a consistent manner.

Following *Benefiel*, the General Assembly in 1994, with amendments in 1996, enacted Virginia Code § 8.01-226, which altered the form and usage of the "fireman's rule." While the exact effect of the Assembly changes are in dispute as argued skillfully by counsel in this case, what is not at issue is the general rule that a statute, passed subsequent to a decision from the Commonwealth's highest court, has precedent authority.

The first paragraph of Virginia Code § 8.01-226 provides that owners and occupiers owe covered public officials who come upon premises in performance of their duties a duty to maintain areas normally open to the public in a reasonably safe condition. Virginia Code § 8.01-226. This paragraph is not at issue in the instant case.

The second paragraph of Virginia Code § 8.01-226 provides that owners and occupiers owe public officials, who come upon premises in performance of their duties, the same duty of care set forth in the first paragraph if they meet the statutory qualifier. The owner and occupier meets the statutory qualifier if that owner or occupier knows, or has reason to know, said public officials are about, or imminently likely, to come onto areas not normally open to the public. *Id.* Similar to the first paragraph, this paragraph is not in contention in the present action.

The fourth paragraph of Virginia Code § 8.01-226 delineates who qualifies as a law enforcement officer and as a firefighter. *Id.* This paragraph only elaborates, and as with the first and second, is not in contention in the present case.

The cantankerous paragraph, which is at issue in the instant case, is the third paragraph of Virginia Code § 8.01-226. That paragraph provides:

> While otherwise engaged in the performance of his duties, a law enforcement officer, Department of Emergency Services hazardous materials officer, non-firefighter regional hazardous materials emergency response team member, or firefighter shall be owed a duty of ordinary care.

*Id.* It is this language which is precisely at issue in the present action.

It is clear that the passage of Code § 8.01-226 had an effect on the fireman's rule. What is unclear from a casual reading of the statute is how usage of the rule was altered. Both plaintiffs and defendants assert that the contentious third paragraph has widely different meanings. Plaintiffs argue that said paragraph significantly mitigated the rule, while defendants claim that the new language refers to those not responsible for the emergency which necessitated the presence of public officials.

Plaintiffs' position regarding the third paragraph is that the phrase "while otherwise engaged" should be interpreted quite broadly and represents the intent of the General Assembly to abrogate the fireman's rule. *See Hearing Transcripts*, April 30, 1997, at 5 (discussion of plaintiffs' counsel on meaning of phrase). Plaintiff states that the third paragraph stands for the abolishment of the common law doctrine of the fireman's rule and now a firefighter, or whichever public official is involved, is owed a duty of care. *Id.* at 5, 13-14. Basically, the traditional interpretation of the fireman's rule "went out the window," in plaintiffs' counsel's words, with enactment of Code § 8.01-226. *Id.* at 6-7.

Defendants, on the other hand, assert that the phrase "while otherwise engaged" should be read in logical contextual order with the entire statute. Paragraphs one and two refer only to property owners and occupiers who owe a duty to defined public officials who respond. Thus, according to the defendants, the vexing third paragraph should be interpreted as applicable to the duty of care owed by third parties not responsible for emergencies that summon the defined public officials to the premises.

Both plaintiffs' and defendants' arguments on the issue of construction of the third paragraph have some merit. However, the phrase "while otherwise engaged" refers to the duty of care owed by anyone not responsible for the emergency to the responding public officials. It includes third parties, as well as owners and occupiers, whose negligent acts are responsible for injury to responding officials, unless those injuries were the direct and proximate result of the emergency which summoned the need for the presence of the responding officials. Third parties whose negligent acts cause the need for the response of the public officials do indeed obtain the benefit of the "fireman's rule." The "fireman's rule" does include third parties whose negligence created an emergency requiring response of, and injury to, statutorily defined public officials. This Court rejects the proffered meaning of the third paragraph by the plaintiffs for the reason that plaintiffs have requested the Court to infer intent of the General Assembly. If the General Assembly desired to abrogate the fireman's rule by statute, it would have clearly stated such in statutory language.

Indeed, further evidence that the fireman's rule was not abandoned comes from the Supreme Court of Virginia. *Goodman v. Hare*, 246 Va. 402 (1993), for instance, was issued after the General Assembly passed Code § 8.01-226. While *Goodman* dealt with the issue of a possible intentional tort exception to the fireman's rule, the *Goodman* court did not address the possibility that the rule itself was no longer valid law. If the Assembly had removed the fireman's rule as a defense in Virginia, the *Goodman* court would have taken note of the fact. By logic, if the rule itself did not exist, then there could be no issue concerning a possible exception to that rule. As previously stated, this Court has decided that the protection of the fireman's rule should extend to third parties whose negligent acts necessitate a response by statutorily defined public officials. However, any injuries sustained by said public officials must be sustained as a proximate result of dealing with that circumstance.

As a hypothetical example, after the fire had begun and the firefighters were on the scene, had defendant Holman not secured his aerial lift, and while moving his vehicle struck a firefighter with the lift, the Fireman's Rule would not apply. The negligent act of not securing the aerial lift and injuring the fireman was not the proximate cause that summonsed the firemen to the scene.

When the rule was adopted in Virginia, the Virginia Supreme Court stated: "we perceive no persuasive reason not to follow the almost unbroken line of decisions holding non-liability to firemen for negligence in the creation of fire." *Chesapeake & Ohio*, 208 Va. at 608, 159 S.E.2d at 656. Further, the court stated that:

> to impose upon an owner liability for such negligence in favor of those who voluntarily assume all the dangers growing out of so hazardous an occupation, however commendably courageous and disinterested the assumptions may be, would inflict an onerous and unfair risk upon one who is deprived of all control over the other's acts, who cannot even prevent him from assuming such risks ... .

*Id.* at 609.

Critical in the analysis of the Virginia Supreme Court is that the people cannot prevent public firefighters from assuming risks in fighting emergencies. Firefighters may deprive citizens of property rights, without compensation, in their mandate to fight fires. Citizens cannot prevent firefighters from conducting their public duty to fight fires. Once the fire department has been alerted, it responds regardless of the desires of the property owner. Such alert may even come from a third party. Thus, if your neighbor notices your home on fire and alerts the fire department, you cannot

say to a firefighter, "Don't fight that fire; I don't want any civil liability for your possible injuries."

Thus, it is clear that being unable to prevent another from assuming risks is an inherent important basis for the fireman's rule. Should non-owners and non-occupiers enjoy the same benefit of the fireman's rule as owners and occupiers? The logic that owners or occupiers have protection of the fireman's rule also holds true for non-owners and non-occupiers whose negligent acts are the source of the fire. A person who starts a fire by negligence and is not an owner or occupier cannot prevent the firemen from conducting their duty to fight fires; such persons cannot prevent firefighters from assuming the risks inherent in a dangerous occupation. Furthermore, as a matter of public policy, failure to extend the protection of the rule to non-owner-occupiers could have a chilling effect on the reporting of fires. When Congress altered the laws regarding liability for fires started in National Forests, making those negligently responsible for starting fires liable for the cost of firefighting and fire damages, the reporting of fires in National Forests fell off substantially. Thus, the "fireman's rule" should be extended as a defense to such persons. Assume a person negligently starts a fire in his own home and that fire spreads to a neighbor's home. Two firefighters, one in each home, are injured in the exact same manner. Unless the "fireman's rule" was extended to cover non-owner-occupiers, the homeowner who started the fire would be liable for one fireman's injuries, but not the other.

The fireman's rule in negligence cases is limited to cases where ordinary negligence is involved. *Commonwealth v. Milsaps*, 232 Va. 502, 510, 352 S.E.2d 311, 316 (1987). The rule does not extend to cases where there is willful and wanton conduct amounting to gross negligence.

In plaintiff's motion for judgment, there is a claim that the conduct of defendant Holman amounted to the willful and wanton standard. Further, plaintiff's motion for judgment states that even if defendant Holman's conduct amounts to simple negligence, the conduct of defendant Virginia Power rose to the level of willful and wanton conduct because the company ignored a known dangerous condition.

A demurrer requires only that the court constructively view as true material facts and reasonable inferences from those facts. *Trumbo*, 107 Va. at 77. Conclusions of law, even if drawn from those accepted as true facts, are in the province of the court to determine. *Trumbo*, 107 Va. at 77; *see Ely*, 238 Va. at 677, 385 S.E.2d at 897. The terms negligence and willful and wanton are conclusions of law and not material facts. *Ely*, 238 Va. at 677, 385 S.E.2d at 897.

The difference between conduct, which can be legally characterized as willful and wanton, and conduct, which can be characterized as legally negligent lies in the state of mind of the tortfeasor. *Todork v. McSurley*, 107 W. Va. 372, 143 S.E. 323 (1929). There need not be any ill will toward those injured, but there must be a lack of care for the safety of others exhibiting indifference to consequences. *Id.* The term willful and wanton imports the knowledge and consciousness that injury will result from the act done, which act must be intended or must involve a reckless disregard for rights of another and will probably result in injury. *Friedman v. Jordan*, 166 Va. 65, 184 S.E. 196 (1936). *See Griffin v. Shively*, 227 Va. 317, 315 S.E.2d 210 (1984) (holding that willful and wanton conduct is a person acting in such a manner that is a conscious disregard of the rights of another or acting with reckless indifference to the consequences).

To be guilty of willful and wanton conduct, the tortfeasor must be conscious of his conduct and conscious from his knowledge of existing conditions that injury would probably result. With reckless indifference to consequence, he consciously and intentionally commits a wrongful act or omits a known duty, which produces an injury. *Thomas v. Snow*, 162 Va. 654, 174 S.E. 827 (1934). See *Norris v. ACF Indus., Inc.*, 609 F. Supp. 549 (S.D. W. Va. 1985) (holding that willful and wanton conduct is conscious, reckless disregard of duty or acts with reckless disregard of consequences). Negligence, on the other hand, conveys that the tortfeasor was heedless, inattentive, or inadvertent. *Thomas v. Snow. See Stamp v. Windsor Power House Coal Co.*, 154 W. Va. 578, 177 S.E.2d 146 (1970) (holding that negligence is failure to bestow care and skill as the situation calls for).

In the instant case, defendant Holman failed to properly restore his aerial lift to a transport-safe position prior to leaving Mary's Gas-Lite Lounge. This caused damage which ultimately resulted in a fire and the tragic deaths of two brave firefighters. While certainly this was inattention and carelessness, leading to an ugly result, such conduct does not rise to the level of wanton. See *A.M.F.J.*

Defendant Holman was not conscious that his failure to lower his aerial lift and secure it for travel could result in great bodily harm or death. Failure to secure the aerial lift was an inattentive mistake not done with reckless disregard of conscious consequences. Defendant Holman, by the act of not fully securing his aerial lift while going to his truck's cab to radio his supervisor, was not aware that this act would produce conditions which could result in great harm or death.

Plaintiffs' motion for judgment asserts that defendant Virginia Power Company's actions amounted to willful and wanton conduct. *A.M.F.J.* This

is the case, plaintiffs allege, because Virginia Power was on notice that such aerial lift accidents were foreseeable. *Id.* Plaintiffs assert that previous incidents included transformer fires, property damages, and personal injury and/or death. *Id.* These incidents prompted defendant Virginia Power to affix warnings to its vehicles and the aerial lift booms, provide insulation of the upper and lower booms with a fiberglass core, and conduct periodic dielectric tests to ensure the insulation was working properly. *Id.* Finally, plaintiffs argue that Virginia Power failed to implement a recommendation by an internal safety committee to install pressure-activated plates and/or switches to prevent operation of the vehicle unless the aerial life was secured. *Id.* Because defendant Virginia Power Company rejected the internal committee's recommendations for financial reasons, this itself constitutes willful and wanton negligence according to plaintiffs. *Id.*

The action of defendant Virginia Power Company in taking measures to mitigate damage caused by unsecured aerial lifts does not support a finding of willful and wanton conduct. Indeed, these acts indicate that Virginia Power was not simply ignoring a known condition, a requisite of willful and wanton conduct, but rather carrying out its duty to protect from such harm. Defendant Virginia Power Company was not recklessly ignoring the dangerous condition caused by unsecured aerial lifts but was actively engaged in taking steps to mitigate and solve said condition.

Failure to follow the safety committee recommendation due to cost considerations is likewise not enough to prove willful and wanton conduct. The mere fact that such a committee was convened lends credence to the concept that defendant Virginia Power Company was not recklessly ignoring the problem. While the recommendations of the internal committee were not followed, the existence of the committee proves that Virginia Power was aware of the problem and investigating solutions. It could be argued that failure to follow the recommendations of the internal committee was negligent in that Virginia Power was inattentive to their recommendations or perhaps careless in not following the recommendations. However, it cannot fairly be said that not following the recommendations amounted to reckless disregard of rights of others. Essential in any decision to implement new methods, operations, or products is the cost of those methods, operations, or products. This is not reckless disregard, but rather the standard manner of doing business in a free enterprise system. If forced to totally disregard cost, in consideration of implementation of safety, a firm could be driven to expenditure of huge sums passed onto consumers in the form of increases in the price of goods.

Basing the decision not to implement possible safety proposals on cost does not amount to reckless disregard but could amount to simple negligence. The mere fact that the firm contemplated the implementation of safety concerns dissipates the requirement of reckless disregard in willful and wanton conduct. Since the "fireman's rule" provides a defense to negligent conduct, there is no need to determine whether Virginia Power was negligent in disregarding the committee's recommendation. This Court simply holds that such conduct was not willful and wanton.

It should be noted that in certain extreme circumstances, a court could sustain a finding of willful and wanton conduct for failure to implement safety items due to cost where the danger was terribly great and the cost to mitigate was modest and reasonable, or a company weighed the ultimate cost of litigation versus the cost of inattention (i.e., The Ford Pinto Case). There is nothing analogous in the instant case. Defendant Virginia Power's conduct was consistent with standard business thinking involving the laws of economics that occurs in every company in America.

Thus, this Court holds that third parties whose negligent acts cause an emergency which then results in injury to responding covered officials get the benefit of the "fireman's rule" defense. Accordingly, the defendants in the instant case may utilize the "fireman's rule." There exists no exception, that of conduct amounting to willful and wanton, beyond negligence, or injury from risks not ordinarily contemplated that can defeat the "fireman's rule." Therefore, the defendants' demurrer is sustained.

Sustaining the demurrer, the cases of *Hudgins v. Holman et al.*, CL97-176, and *Victorio v. Holman et al.*, CL97-177, are dismissed.