# CHARLESTON.

Parsons *et al. v.* Baltimore B. & L. Asso. *et al.*

Submitted June 16, 1897—Decided March 23, 1898.

1. DEED—*Recording— Party Walls.*

   A deed signed, sealed, and acknowledged, which establishes and secures to adjacent lot owners mutual interests in a party wall, is properly admitted to record under the statutes of this State, and is notice to subsequent purchasers of the covenants therein contained. (p. 338).

2. DEED—*Party Walls—Covenants.*

Where one of the parties to such deed covenants that he or his grantee, whenever they make use of such wall, will pay one-half of the expenses of the construction thereof, and further provides that such covenant shall run with the lot, a charge or lien is thereby created on such lot, which will bind the same in the hands of subsequent purchasers until discharged.  (p. 339).

3. PARTY WALLS—*Promise to Pay—Assignment.*

The promise to pay being personal to the owner of the lot constructing the wall, such owner may assign the same to any one she may please; and such assignee may maintain a suit to enforce payment of such liability.  (p. 341).

Appeal from Circuit Court Cabell County.

Suit by W. J. Parsons and others against the Baltimore Building & Loan Association and others to declare a lien on certain land, and subject the same to sale.   From a decree for plaintiffs, defendant association appeals.

*Affirmed.*

L. D. ISBELL and JOHN B. LAIDLEY, for appellant.

SIMMS & ENSLOW and HERBERT FITZPATRICK, for appellees.

DENT, JUDGE:

On the 15th day of March, 1893, John Hooe Russell and Elizabeth Shore and husband entered into the following mutual agreement, which they signed, sealed, acknowledged, and had recorded, to wit:

"This deed, made this 15th day of March, 1893, between R. Shore and Elizabeth Shore, his wife, party of the first part, and J. H. Russell, party of the second part, witnesseth:   That whereas, Elizabeth Shore is the owner of lot number twenty-one of block number 144 in the city of Huntington, Cabell county, West Virginia, situated on the north side of 3d avenue, and the second lot from the corner of 11th St., and commencing 40 feet from said 11th St., and the said Russell is the owner of the adjoining lot lying between her said lot and 11th St., and his lot is numbered 22 in block number 144, and the said E. Shore is about to erect a brick building on her said lot, and [it] is now-agreed between the parties aforesaid that the said E. Shore should erect the west brick wall of her said building so that one-

half of the wall shall be on the said lot of the said Russell, and it shall be a party wall between the said Russell and the said E. Shore, and that whenever the said Russell, his assigns or grantees, use the said western wall of said building, he or his grantee or assignee shall use the said wall, and shall pay to the said E. Shore, or whomsoever he may assign to collect the same, half the actual cost of said west wall of said building; and this deed or covenant shall run with the said lots. Given under our hands and seals, the day and year aforesaid. Elizabeth Shore. [Seal.] R. Shore. [Seal.] Jno. Hooe Russell. [Seal].

"State of West Virginia, Cabell County, to wit: I, H. C. Simms, a notary public in and for the county aforesaid, do certify that J. H. Russell, whose name is signed to the foregoing writing, bearing date on the 15th day of March, 1893, has this day acknowledged the same before me, in my said county. Given under my hand, this 15th day of March, 1893,  H. C. Simms, N. P.

"State of West Virginia, County of Cabell—ss.: I, Frances M. Hartman, a notary public in and for the county and state aforesaid, do certify that Elizabeth Shore and R. Shore, her husband, whose names are signed to the foregoing writing, bearing date on the 15th day of March, 1893, have this day acknowledged the same before me, in my said county. Given under my hand, this 31st day of March 1893.  F. M. Hartman, Notary Public.

"State of West Virginia, Cabell County Clerk's Office. The foregoing writing was this day presented in my said office, and duly admitted to record. Given under my hand, this 31st day of March, 1893.  F. F. McCullough, Clerk C. C. C.

"(A copy from the record).

"Teste:  F. F. McCullough, Clerk. C. C. C."

Without building on his lot, on the 13th day of October, 1894, Russell conveyed the same to Lulu M. Harris, by deed in which he stipulated "that the said Lula M. Harris is to pay Mrs. Elizabeth Shore for the part of the wall of the Shore building which adjoins the said lot herein conveyed, agreed to be bought by the said Jno. Hooe Russell of the said Mrs. Elizabeth Shore, so as to relieve the said Jno. Hooe Russell from any payment on account of said

wall;" and he further warranted "generally the title to the same free from all liens and encumbrances except for the said wall adjoining the said lot, and for the said paving assessments which the said purchasers are to pay." Lula M. Harris immediately proceeded to build on the lot, and make use of the wall; and, for the purpose, she borrowed from the Baltimore Building & Loan Association the sum of fifteen thousand dollars, to secure which she conveyed the lot in trust to Thomas A. Wiatt, trustee. Failing to pay her dues, assessments, *etc.*, to the association, it caused the trustee to sell the property, and became the purchaser thereof. Mrs. Shore being still the owner of the adjoining lot, and having assigned her rights as to the one-half of the expense of building the wall to the present plaintiffs and Thomas Sikes, the defendant, the present suit was instituted to have the same declared a lien on the Russell lot, and, in default of payment thereof, to subject the lot to sale. The circuit court so decreed, and the association appeals, and presents the following three material questions to this Court: (1) Was the agreement of the 15th March, 1893, such a deed as comes within the provisions of our recording statutes? (2) Did it create a lien or charge on the Russell lot for one-half the expense of the erection of the party wall? (3) Was such a lien transferable in equity?

1. The paper on its face purports to be a deed. It is signed, sealed, acknowledged, and placed on record by the parties. It mutually secures a joint interest in a party wall, situated half on each of two adjoining lots, to the owners thereof. It is therefore a mutual exchange of an interest or easement in real estate. Code, c. 71, s. 5, provides that "any interest in or claim to real estate may be disposed of by deed or will." To make a good deed, a writing need not be in any particular form or words, so the intention thereof is clear, and it is signed, sealed and delivered. Recordation under certain circumstances is a sufficient delivery. *Id.*, c. 72, s. 1. "The matter written must be legally and orderly set forth; that is there must be words sufficient to specify the agreement and bind the parties, which sufficiency must be left to the courts of law to determine; for it is not absolutely necessary in law

to have all the formal parts that are usual drawn out in deeds, so as there be sufficient words to declare clearly and legally the parties' meaning." 1 Tuck. Comm. 227. In a deed "it is not even necessary to use the technical operative words of any kinds of conveyance, although it is advisable to do so, in order to remove every doubt of the validity of the conveyance. Any words will be sufficient if they clearly manifest the intention to transfer the estate." 5 Am. & Eng. Enc. Law, 438. The intention of the parties and the interest acquired and conveyed are plainly written on the face of this instrument, and therefore it must be regarded as a good deed for the purposes executed, and properly admitted to record. Not being an executory contract, it does not come under the provisions of section 4, chapter 74, Code, but is subject to section 5 of such chapter.

2. It is equally clear that the deferred payment of the purchase money for a one-half interest in the wall was intended to operate as a charge or mortgage on the Russell lot, and not as an individual liability of Russell, unless he should make use of the wall. The person who used the wall, and therefore reaped the benefit thereof, was to be individually liable alone for the payment of the same, and to secure which the liability, as well as the benefits, was to run with and remain a charge on the lot. The language of the contract is "that whenever the said Russell, his assigns or grantees, use the said western wall of said building, he or his grantee or assignee shall use the said wall, and shall pay to the said E. Shore, or whomsoever she may assign to collect the same, half the actual cost of said west wall of said building, and this deed or covenant shall run with said lots." It was plainly the intention of Russell only to create a personal liability on himself in case he used or got the benefit of the use of the wall, and that he did not intend personally to guaranty payment by his assignee or grantee in case the latter used the wall, but to bind the lot for the payment thereof, and thus relieve himself from personal liability, to which Mrs. Shore assented when she agreed to the provision that this deed, which included all of its covenants and payments made or to be made, "shall run with the said lots." To create an equitable mortgage or lien, it

matters not what language is used, so the intention is apparent. 13 Am. & Eng. Enc. Law, 608. While it might be better, following the rule of this Court in its opinions, to express the retention of a lien, or the grant of a charge or mortgage, in such plain and easy terms that even the unlearned in law and the weak of comprehension might understand, yet such is not an essential legal requirement.

The understanding that Russell had as to the effect of his deed is shown in his conveyance to Lula M. Harris, wherein he refuses to warrant the lot as against the incumbrance arising out of the party-wall agreement, and the fact that he adopted the additional precaution to provide against his personal liability cannot be deemed an admission of such liability if it did not already exist. It is also apparent from these stipulations that Russell did not get the benefit of the wall in the sale of the lot, but it was expressly excepted therefrom. Neither did Lula M. Harris get the benefit thereof, for she lost the whole property in payment of the money she put in the building. But the association did get the benefit thereof in its trust lien, which was put on the property before Lula M. Harris became liable for the payment of the same by complete user thereof. And the association, having notice thereof, both from the agreement recorded and the provisions of the deed from Russell to Lula M. Harris, under whom it derives title, should have seen that the party wall was paid for, either out of the money loaned, or the rents and profits of the real estate accruing prior to its purchase. Russell, in his deed, could not personally bind his grantee, but he could bind the lot, and the grantee would take it subject thereto. It has been held by this Court that the acceptance of a deed is an acceptance of all the conditions thereby imposed; and hence Lula M. Harris might be regarded as individually bound, although she signed no writing to this effect. *McClure* v. *Cook*, 39 W. Va., 579, (20 S. E. 612). In the case cited, JUDGE HOLT, on page 585, 39 W. Va., and page 614, 20 S. E., says: "It is true, a lien might have been in so many words reserved on the face of the conveyance on the land; * * * but was that indispensable? A trust and charge like this are not within the letter of the statute, for it speaks only of purchase money." In this case it is

not a question of purchase money, but it is as to whether the lot is liable for the improvement thereon, with the consent of the owner thereof. The association, deriving title from Lula M. Harris, took it subject to like conditions, yet did not make itself personally liable therefor, so as to be subject to a suit at law or to a personal decree over in case a deficiency should remain after application of the proceeds arising from a sale of the lot. The personal undertaking of Lula M. Harris was not transmitted to her grantee, and an action at law could not be maintained against such grantee. *Cole* v. *Hughes*, 54 N. Y. 444; *Scott* v. *McMillin*, 76 N. Y. 141. The case of *Mott* v. *Oppenheimer*, 135 N. Y. 312, (31 N. E. 1097), is exactly in point with the case under discussion, the language used in the party-wall contracts being almost identical. The court held that the contract created a charge or lien on the land as against a subsequent grantee, who had not assumed the same personally, and had no notice thereof other than the record of the instrument afforded. The court says: "Where the covenant concerns land, and is one that is capable of being annexed to the estate, and it appears that it is the intention of the parties, as expressed in the instrument, then it shall be construed as running with and charging the land thereafter." Having once attached as a lien, he could not be released except by the person for whose benefit it existed. Neither Russell nor Mrs. Harris could release, but only Mrs. Shore or her assignee.

So far as Mrs. Shore was concerned, the payment of the money was personal to her or her assignee, and was not a covenant running with her lot. *Hart* v. *Lyon*, 90 N. Y. 663. Therefore the plaintiffs, as her assignees, had the right to maintain this suit. The trustee, Wiatt, having sold and conveyed the property, was not a necessary party to this suit. Lula M. Harris was made a party, but was not served with process, nor did the defendants insist on her presence. As her rights have not in any manner been determined by the decree, she can still be brought before the court when the case is remanded, if the defendants so require.

The operative portion of the decree entered in this case is in these words: "It is therefore adjudged, ordered, and

decreed that the said sum of $961.89, the cost of construct-
ing the said wall, with interest to this date, amounting to
$115.29, making a total of $1,077.18, is the first lien and
charge upon the said lot 22 of block No. 144, and it appear-
ing there are no other liens upon the said property." This
is not a personal decree against the association, nor does it
subject the property to sale, but merely declares the debt
a lien thereon. The decree is therefore affirmed to this
extent, and the cause is remanded, with direction to the
circuit court to subject the property to sale unless the debt,
interest, and costs be paid, and to be further proceeded in
according to the rules of equity.

*Affirmed.*