437 S.E.2d 271

**LOGAN BANK & TRUST COMPANY, a West Virginia Banking Corporation, Plaintiff Below, Appellee,**

v.

**The LETTER SHOP, INC., a West Virginia Corporation, James W. Mullins, Brenda G. Mullins, Thomas J. George and Linda M. George, Defendants Below, Appellees,**

**Louis A. Capaldini, Jacqueline M. Capaldini, Vernon N. Mullins and Vicki L. Mullins, Defendants Below, Appellants.**

No. 21610.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 21, 1993.

Decided Oct. 28, 1993.

---

K. Paul Davis, B. Judd Hartman, Spilman, Thomas, Battle and Klostermeyer, Charleston, for appellee, Logan Bank & Trust Co.

Philip B. Hereford, David L. Watson, Hereford & Hereford, Charleston, for appellants, Louis A. Capaldini and Jacqueline M. Capaldini.

John A. Rollins, Timbera Carte Wilcox, Frances W. McCoy, Lewis, Friedberg, Glasser, Casey & Rollins, Charleston, for appellants, Vernon L. Mullins and Vickie L. Mullins.

BROTHERTON, Justice:

The appellants, Vernon N. Mullins, Vickie L. Mullins, Louis A. Capaldini and Jacqueline M. Capaldini, appeal from the September 2, 1992, orders of the Circuit Court of Logan County, West Virginia, which granted summary judgment against them in two consolidated civil actions.

On March 21, 1991, the appellee, Logan Bank & Trust Company (LB & T), initiated civil proceedings in the Circuit Court of Logan County, seeking to collect from the appellants as guarantors of a $500,000.00 promissory note which was in default. LB & T moved for summary judgment on February 26, 1992, and a hearing was held on the motion on August 26, 1992. The court determined that there was no genuine issue of material fact concerning the appellants' liability to LB & T, and granted LB & T's motion for summary judgment.

The appellants now argue that by granting summary judgment, the lower court rejected their primary defense to liability, which was that LB & T's conduct violated both public policy and specific provisions of the Uniform Commercial Code which are set forth in W.Va.Code §§ 46–1–103 and 46–1–203. The appellants charge that LB & T failed to disclose material facts in order to induce them to act as personal guarantors on the loan in question.

In *Warren v. Branch*, 15 W.Va. 21 (1876), this Court discussed disclosure to a surety in a different context and under conditions which were obviously far different from those which exist in today's world of finance. Because we have never specifically addressed the issue of a bank's duty to disclose adverse material information regarding a loan to potential guarantors, the appellants now urge this Court to follow the lead of a number of other courts and adopt the principles found in § 124 of the *Restatement of the Law of Security* (1941). Section 124, titled "Non–Disclosure By Creditor," provides, in part, that:

(1) Where before the surety has undertaken his obligation *the creditor knows facts unknown to the surety that materially increase the risk beyond that which the creditor has reason to believe the surety intends to assume,* and the creditor also has reason to believe that these facts are unknown to the surety and has a reasonable opportunity to communicate them to the surety, *failure of the creditor to notify the surety of such facts is a defense to the surety.* (Emphasis added.)

Comment (a) makes it clear that "[n]on-disclosure of material facts in the circumstances of the rule stated in this Section constitutes fraud on the surety. The rule is merely a special application in suretyship of the rule of Contracts that fraud creates a defense." In addition, Comment (b) to § 124 explains that:

b. Although in applying the rule stated in this Section to particular situations there is often considerable difficulty in ascertaining the precise degree of knowledge of surety and creditor and even in determining the materiality of the facts alleged to be concealed, the rule itself is simple. It does not place any burden on the creditor to investigate for the surety's benefit. It does not require the creditor to take any unusual steps to assure himself that the surety is acquainted with facts which he may assume are known to both of them. Among facts that are material are the financial condition of the principal, secret agreements between the parties, or the relations of third parties to the principal. If the surety requests information, the creditor must disclose it. Where he realizes that the surety is acting or is about to act in reliance upon a mistaken belief about the principal in respect of a matter material to the surety's risk, he should afford the surety the benefit of his information if he has an opportunity to do so.

Every surety by the nature of his obligation undertakes risks which are the inevitable concomitants of the transactions involved. Circumstances of the transactions vary the risks which will be regarded as normal and contemplated by the surety. While no surety takes the risk of material concealment, what will be deemed material concealment in respect of one surety may not be regarded so in respect of another. A creditor may have a lesser burden of bringing facts to the notice of a compensated surety who is known to make careful

investigations before taking any obligation than to a casual surety who relies more completely upon the appearances of a transaction. The rule stated in this Section applies an objective test of the materiality of the facts not disclosed rather than the intent of the creditor if failing to make the disclosure.

■ We hereby adopt the disclosure rule in § 124 of the *Restatement of the Law of Security* (1941), which lists three prerequisites to finding that a creditor has a duty to disclose certain facts that it is aware of about the debtor to the surety. These conditions are: (1) "the creditor has reason to believe" that the facts materially increase the surety's risk "beyond that which the surety intends to assume;" (2) the creditor "has reason to believe that the facts are unknown to the surety;" and (3) the creditor "has a reasonable opportunity to communicate the facts to the surety."

However, the adoption of § 124 does not dispose of the question which now confronts us, because the application of the objective test found in § 124 to the facts presented in this case is unclear.[1] "As the comments to [§ 124] indicate, there may be some difficulty in ascertaining the precise degree of knowledge possessed by the surety and in determining the materiality of facts which were not disclosed ... But these ordinarily will be questions for the trier of fact." *First National Bank & Trust Co. of Racine v. Notte*, 97 Wis.2d 207, 293 N.W.2d 530, 536 (1980).

The appellants maintain that summary judgment was inappropriate because there is a factual dispute about whether LB & T acted in good faith in this matter. LB & T counters this position by questioning whether it actually owed the appellants a duty of good faith. The bank maintains that there was not a fiduciary relationship between the parties. LB & T also asserts that the guarantors had a duty to inquire and make themselves aware of information relevant to the loan.

Because of the complex factual issues which remain in dispute in this case, we conclude that summary judgment was improper. For the reasons discussed below, we reverse the circuit court's summary judgment orders and remand this case to that court for trial by jury.

Facts relevant to our inquiry reveal that Thomas J. George and James W. Mullins became partners in a business enterprise known as The Letter Shop, Inc., in the Spring of 1983. At the time, Thomas George was working for Logan Media, Inc., as its President and Publisher. James W. Mullins is the son of one of the appellants herein, Jacqueline M. Capaldini.

Initial financing for The Letter Shop acquisition was provided by LB & T. First, however, in December, 1984, The Letter Shop attempted to get a Small Business Administration (SBA) guaranty of 80% of a $250,000.00 loan. The SBA refused to grant the guaranty. In a letter dated January 8, 1985, the SBA explained that its refusal was based on the insufficient information provided in the original application.

Robert L. Wright, a certified public accountant, then provided the SBA with an extensive response on behalf of LB & T. By letter dated January 21, 1985, LB & T submitted the information compiled by Mr. Wright to the SBA and advised that it hoped the SBA, like LB & T, would consider the requested $250,000.00 as a secured loan, given the financial status of the anticipated guarantors of the loan. The proposed guarantors on this initial $250,000.00 loan included the Georges and Logan Media, Inc. However, none of the appellants herein had any involvement in this transaction.

The SBA denied approval of LB & T's request for a guaranty of the proposed Letter Shop loan by letter dated January 29, 1985. The reasons given were as follows: (1) disproportion of the $250,000.00 loan requested, along with other debts, to net worth of

---

**1.** *But see Fortmeyer v. Summit Bank*, 565 N.E.2d 1118 (Ind.App. 3 Dist.1991), in which, under facts similar to those now before us, the court declined to adopt § 124 of the *Restatement of the Law of Security* because it found that the appellants failed to present evidence which satisfied each element of their defense, and, "[b]ecause this issue can be resolved without reference to disputed facts." *Id.* at 1121–22.

The Letter Shop before and after the loan;[2] (2) lack of reasonable assurance of ability to repay the requested loan and other obligations from earnings; (3) gross disproportion between owner's actual investment and the loan requested; and (4) the collateral, when considered with other factors, was deemed insufficient.

Although the SBA refused the guaranty, LB & T proceeded with the loan. On March 4, 1985, a $250,000.00 promissory note was signed on behalf of The Letter Shop by its President, James Mullins. In addition, Mr. and Mrs. George and Mr. and Mrs. Mullins executed a Guaranty Agreement, by which they agreed to jointly and severally guaranty the note. Mr. George's name also appears on the guaranty on behalf of Logan Media, Inc., as its President.

Finally, in order to secure the $250,000.00 note, an Assignment of Promissory Note as Collateral Security was also executed on March 4, 1985, whereby Mr. George assigned to LB & T, as security, a promissory note payable to him in the amount of $450,715.20 by Bay St. Louis, Inc.[3]

In March, 1987, The Letter Shop submitted a proposal to LB & T for a new $500,-000.00 loan. This proposal included an outline for restructuring The Letter Shop's ownership to include James W. Mullins (from 48% owner to 25% owner), Thomas J. George (from 51% owner to 25% owner), Louis A. Capaldini (new 25% owner), and Vernon N. Mullins (new 25% owner). This proposal also included the offer from a group of individuals (referred to collectively as "the Mullins family group") to act as personal guarantors on this loan. This group of prospective guarantors was comprised of James W. Mullins, Brenda G. Mullins, Vernon N. Mullins, Vicki L. Mullins, Thomas J. George, Linda M. George, Louis A. Capaldini, and Jacqueline M. Capaldini.

On April 24, 1987, the original $250,000.00 Letter Shop loan was "paid off" with the proceeds of the subsequent $500,000.00 loan, which is at the center of the controversy in this case. The four appellants herein were the personal guarantors of this $500,000.00 loan.

The appellants now maintain that a review of the loan history shows that when the $500,000.00 loan now at issue was made on April 24, 1987, the original $250,000.00 loan was in serious default. No payments had been made on this loan for three months. According to the appellants, from the inception of the original $250,000.00 loan in March, 1985, through April 24, 1987, payments to LB & T were late on a regular basis.

However, the appellants contend that it was only after The Letter Shop defaulted on the $500,000.00 loan and LB & T instituted a civil action against them that they became aware of certain "revealing events" and what they refer to as a "course of deception" by LB & T. For this reason, the appellants argue that they are entitled to trial by jury to determine whether LB & T knew certain material facts which, had they been disclosed, may have caused the appellants to refuse to participate as guarantors of the $500,000.00 loan.

In granting LB & T's motion for summary judgment, the lower court made extensive findings of fact. The appellants herein (defendants below) maintain that they were unaware of and did not review the $500,000.00 loan proposal until after the consolidated civil actions were instituted against them. However, the lower court found that "[t]he risks, whether known or unknown, associated with the signing of the said guaranty agreement were voluntarily assumed by defendants Vernon N. Mullins, Vicki L. Mullins, Louis A. Capaldini and Jacqueline M. Capaldini primarily for the purpose of helping the family, specifically, helping family members James W. Mullins, Brenda G. Mullins, Linda M. George and Thomas J. George."

In its conclusions of law, the circuit court stated that there was not a fiduciary relationship between LB & T and the appellant/guarantors, that LB & T did not conceal any material facts which it had a duty to disclose,

2. As of August 31, 1984, the borrower's last fiscal year, The Letter Shop had a deficit net worth of $104,553.00.

3. This note arose out of Mr. George's sale of another business.

and that LB & T had no duty to disclose "to the guarantors its knowledge or any information regarding the financial condition of The Letter Shop or the history of the original $250,000.00 loan." Thus, the lower court granted summary judgment, concluding that the appellant/guarantors "assumed the risk associated with the execution of the guaranty agreement."

■ "We have traditionally recognized that a summary judgment constitutes a decision that there are no genuine issues of material fact between the parties, and therefore a trial on the merits is foreclosed. For this reason, we have viewed summary judgment with suspicion...." *Masinter v. WEBCO Co.*, 164 W.Va. 241, 241–242, 262 S.E.2d 433, 435 (1980), citing *Gavitt v. Swiger*, 162 W.Va. 238, 248 S.E.2d 849 (1978); *Johnson v. Junior Pocahontas Coal Co., Inc.*, 160 W.Va. 261, 234 S.E.2d 309 (1977); *Oakes v. Monongahela Power Co.*, 158 W.Va. 18, 207 S.E.2d 191 (1974); *Hines v. Hoover*, 156 W.Va. 242, 192 S.E.2d 485 (1972); *State ex rel. Payne v. Mitchell*, 152 W.Va. 448, 164 S.E.2d 201 (1968).

In *Masinter*, our review of a number of cases yielded the conclusion that "... summary judgment should not be utilized in complex cases, particularly where issues involving motive and intent are present." *Id.*, 164 W.Va. at 243–244, 262 S.E.2d at 436. Consequently, we determined that "[e]ven if the trial judge is of the opinion to direct a verdict, he should nevertheless ordinarily hear evidence and, upon a trial, direct a verdict rather than try the case in advance on a motion for summary judgment." *Id.* at syl. pt. 1.

■ There is no question that the case now before us is one involving complex issues, including questions which may be related to motive and intent. The "facts" presented by the appellants/guarantors to support their contention that they were misled differ significantly from the "facts" that LB & T offers to show why it believes it had no duty to disclose information, adverse or otherwise, to parties who made no inquiries. For this reason, we cannot uphold the lower court's conclusion that summary judgment was proper. "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Casualty & Surety Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).

■ Further inquiry into the facts is not only desirable, but necessary in this instance. There are significant questions of fact related to what each party knew and when they knew it regarding the financial transactions which are at the heart of this matter. Clarification of these facts is needed in order to ascertain the exact nature of the relationships between the parties, whether the appellants should have inquired into the financial condition of The Letter Shop, and whether the bank had a duty to disclose any adverse information that might affect the appellants' decision to guaranty the loan. For example, is there any evidence which suggests that the guarantors were fully aware of The Letter Shop's precarious financial condition? Or, is there evidence to indicate that LB & T withheld material information in order to persuade the appellants to guaranty the loan? Did LB & T actively withhold information, or did the bank simply assume that because they were family members, the guarantors must have been aware of what they were getting into when they agreed to guaranty the $500,000.00 loan?

There are far too many inferences that could be drawn from the facts which are alleged for this court to permit the matter to be disposed of on a motion for summary judgment. Thus, we reverse the September 2, 1992, orders of the Circuit Court of Logan County and remand this case for trial by jury.

Reversed and remanded.